FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

AUG 0 9 2018

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO CELLULAR TELEPHONES IN THE POSSESSION OF THE DRUG ENFORCEMENT ADMINISTRATION | Misc. No. 18-2018-SAG |

## AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT

Your Affiant, Drug Enforcement Administration Special Agent Todd Davis, deposes and states as follows:

1. This affidavit is submitted in support of search warrants for the following electronic devices seized from Reinaldo ZAYAS-MERCADO upon his arrest on March 26, 2018 (collectively, the "**Target Phones**"):

    a.   IPhone - International Mobile Subscriber Identity (IMSI) 310120057375062, Electronic Serial Number (ESN/MSN) 089595136805513557, Mobile Station Identification Number (MSID) 000004432803266; Subject Number (443) 960-5714

    b.   IPhone - International Mobile Subscriber Identity (IMSI) 310120223960914, Electronic Serial Number (ESN/MSN) 089286887208799001; Mobile Station Identification Number (MSID) 000004104193131, Subject Number (443) 721-1008

2. The above devices are in the possession of the Drug Enforcement Administration. I submit that there is probable cause to believe that these electronic devices contain evidence of the intent to distribute narcotics in violation of 21 U.S.C. § 841, evidence of participation in a conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, evidence of the importation of narcotics in violation of 21 U.S.C. § 952,



and/or evidence of participation in a conspiracy to import narcotics in violation of 21
U.S.C. § 963.

      3.      Because this affidavit is being submitted for the limited purpose of
establishing probable cause for the search warrants, I have not included every detail of
every aspect of the investigation. Rather, I have set forth only those facts that I believe
are necessary to establish probable cause. I have not, however, excluded any information
known to me that would defeat a determination of probable cause. The information
contained in this Affidavit is based upon my personal knowledge, my review of
documents and other evidence, and my conversations with other law enforcement officers
and other individuals. All conversations and statements described in this Affidavit are
related in substance and in part unless otherwise indicated.

**EXPERTISE**

      4.      I am a Special Agent with the Drug Enforcement Administration (DEA).  I
have been so employed since November 2005.  I am currently assigned to Group 56 of
the DEA's Baltimore District HIDTA Office.  I am an officer of the United States who is
empowered by law to conduct investigations of, and to make arrests for, offenses
enumerated in Title 21 of the United States Code.

      5.      Prior to my employment at DEA, I was a Police Officer with the Maryland
State Police for approximately nine years.  During my time as a Maryland State Trooper,
I attended a 27 week police training academy, was a member of several different
investigative units within the Maryland State Police, and had similar experiences to that
of my time as an agent with the DEA.  Those experiences are described in combination
with that of my DEA experiences in later paragraphs.

2



6.      As part of my employment with DEA, I attended the Basic Agent Training

Program, a 16-week resident program that included academic instruction in the basics of

report-writing, law, firearms, surveillance techniques, interview and interrogation

techniques, automated information systems, drug identification, and defensive tactics, as

well as leadership and ethics.  During my years on duty, I have participated in numerous

arrests involving narcotics violations.  I have also participated in the execution of

numerous search and seizure warrants.  I have been the affiant for numerous search

warrants and tracking warrants.   I have reviewed taped conversations, as well as

documents and other records relating to narcotics trafficking and money laundering.  I

have examined records consisting in part of buyers and sellers lists, and pay/owe ledgers.

I have interviewed drug dealers, drug users, and confidential informants and have

discussed with them the lifestyles, appearance and habits of drug dealers and users.

7.      I have been involved in, and authored more than five affidavits in support

of the interception of wire and electronic communications in the Circuit Court for

Baltimore City, the Circuit Court for Baltimore County, and the U.S. District Court of

Maryland.  During the course of these wiretap investigations, I have listened to numerous

intercepted phone calls between individuals involved in narcotics conspiracies.  I have

participated in numerous debriefings of narcotic traffickers, confidential informants, and

sources of information.  I have participated in several covert undercover operations that

have resulted in large seizures of controlled dangerous substances ("CDS"), weapons,

vehicles, currency and other proceeds.  I have gained a working knowledge of drug

language and terminology commonly used on a daily basis by Baltimore area drug

dealers.  From those investigations I have authored and/or executed dozens of search and



seizure warrants relating to controlled substances, violent crime, and/or firearms violations.

8.      Through my training and prior experience in drug trafficking investigations and arrests; I am familiar with the actions, traits, habits, and terminology utilized by drug traffickers. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. I know, for example, that narcotics traffickers typically use cellular telephones and other electronic devices to communicate with suppliers and customers and otherwise further their drug trafficking activities.

## PROBABLE CAUSE

9.      On March 23, 2018, two suspicious Priority Mail Parcels were retrieved by U.S. Postal Inspector Douglas Henegar from the incoming mail facility in Maryland. One parcel ("Parcel 1") was addressed to "Jose Arroyo" at "400 N. Bouldin St. Baltimore, Md. 21224." It said it was from "Jorge Torvella" at "Marine Center Villa Mana Shopping #2 Fajardo, PR 00738." The other parcel ("Parcel 2") was addressed to "Luiz Ortiz" at "438 Cornwall St. Baltimore, MD 21224." It said it was from "Javier Jiminez" at "Calle Davila Zaldondo #54 Liquillo, PR 00773."

10.      On that same day, the Honorable Stephanie A. Gallagher authorized search warrants for Parcels 1 and 2. When the packages were opened, each contained some electronic equipment (e.g., computer hard drive cases), which, in turn, contained a large amount of suspected powder cocaine. Most importantly, the two packages appeared

to be two halves of the same brick of cocaine. Investigators suspected this because each package had one half of a "Nike" logo was imprinted on the wrapping, as shown in the following pictures:


**Parcel 1**


**Parcel 2**

11.     Both parcels weighed approximately 530 grams and both field tested positive for cocaine. (Subsequent lab analysis confirmed the field test for Parcel 1; the results for Parcel 2 remain pending).

12.     The parcels were then repackaged.   Law enforcement removed approximately 30 grams of the cocaine from each package in order to conduct controlled deliveries of each.

13.     At approximately 11:30AM on March 26, 2018, an undercover postal inspector delivered Parcel 1 to 400 N. Bouldin St. A woman, later identified as Esmerald Figueroa, was standing on the porch and took the package inside.  Moments later, Figueroa exited the residence with a shopping cart filled with items.  Law enforcement followed her to the corner of Monument Street and Haven Street where she stood as if waiting for someone.  A white Infinity then pulled up.  Figueroa walked over to the Infinity and handed Package 1 to the driver.  A member of law enforcement walked by the vehicle and noticed the driver had opened the package and was rifling through the contents.  The driver, later identified as Reinaldo ZAYAS-MERCADO, then drove away.



Law enforcement then tried to pull the vehicle over, and a chase ensued before the Infinity was trapped by traffic. ZAYAS-MERCADO was arrested.

14. A search incident to arrest located the mail parcel containing the 30-gram sample of cocaine in the passenger compartment. That mail parcel was seized as evidence. ZAYAS-MERCADO also had the **Target Phones** on him at that time. The **Target Phones** were located in the center console of the Infiniti that ZAYAS-MERCADO was driving, directly next to the driver's seat. The **Target Phones** were seized and have remained in the possession of law enforcement since ZAYAS-MERCADO'S ARREST.

15. After being read his *Miranda* rights, ZAYAS-MERCADO told authorities that he was picking up the parcel for an unknown female but knew there was cocaine inside.

16. Sprint subscriber information on both cell phones comes back listed to Reinaldo ZAYAS-MERCADO, Reinaldo ZAYAS JANTEH-ZAYAS, or Reinaldo MERCADO JANTEH-ZAYAS of 2035 Bear Ridge Rd Dundalk, MD 21222 or 551 Sepia Ct Newark, DE 19702.

17. A controlled delivery of Parcel 2 was conducted later on March 26, 2018. That parcel ended up being received by ERICK COLLAZO. A review of COLLAZO's phone showed communications with ZAYAS-MERCADO. Law enforcement believes that COLLAZO was receiving Parcel 2 on ZAYAS-MERCADO's behalf.

18. On June 12, 2018, the Grand Jury for the District of Maryland returned an indictment charging, in relevant part, ZAYAS-MERCADO with conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine and attempted

6

possession of 500 grams or more of cocaine. *See* Criminal No. JKB-18-0321.

## CONCLUSION

19.    Based on my training and experience, I know that narcotics traffickers routinely use cellular telephones in the commission of narcotic transactions to communicate with their co-conspirators to advise the status of impending shipments of narcotics and/or to coordinate the pick-up of bulk currency in order to avoid seizure from detection and loss from theft. I know through my training and experience that these cellular telephones commonly retain telephone numbers and other text messages that are dialed or sent to the device.

20.    Based on the information set forth in this affidavit, I submit that there is probable cause to believe that in both cell phones, there will be evidence of intent to distribute narcotics in violation of 21 U.S.C. § 841, conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, such as contact names, addresses, phone numbers, times of contact, text messages, email messages, voicemail messages, photographs, evidence of travel and financial information, and other electronically stored information. I request permission to search both identified cell phones, listed above and described in Attachment A, for the information in Attachment B, subject to the procedures outlines in Attachment C.

_____
Special Agent Todd Davis,
Drug Enforcement Administration

Sworn to before me this 23rd day of July, 2018.

_____
Stephanie A. Gallagher
United States Magistrate Judge



Attachment A

The following cellular phones, seized from Reinaldo Luis ZAYAS-MERCADO during his arrest on March 26, 2018 and retained by the Drug Enforcement Administration since that time, are the subject of this warrant (collectively, the "**Target Phones**"):

     a.  IPhone - International Mobile Subscriber Identity (IMSI) 310120057375062, Electronic Serial Number (ESN/MSN) 089595136805513557, Mobile Station Identification Number (MSID) 000004432803266; Subject Number (443) 960-5714

     b.  IPhone - International Mobile Subscriber Identity (IMSI) 310120223960914, Electronic Serial Number (ESN/MSN) 089286887208799001; Mobile Station Identification Number (MSID) 000004104193131, Subject Number (443) 721-1008

8



## Attachment B

These warrants authorize the search and seizure of the following information and electronically stored data contained from the **Target Phones**, further described in Attachment A:

1.  Names, addresses, telephone numbers, and other contact information of co-conspirators;
2.  Communications (such as text messages and email messages) with co-conspirators; and
3.  Photographs.
4.  Any and all records and documents related to the acquisition, possession or distribution of controlled dangerous substances, including but not limited to appointment books, diaries, calendars, work schedules, phone numbers, email addresses, and real property addresses;
5.  Any and all records, documents, and materials pertaining to employment, including but not limited to job applications, resumes, references, fringe benefits and correspondence;
6.  Any and all records, documents, and materials pertaining to the use of the U.S. Postal Service, UPS, or other commercial carriers;
7.  Records, receipts, bank statements, and bank records, ATM/Debit cards, money drafts, letters of credit, wire transfers, money orders, and cashier check, passbooks, bank checks, and any other items evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money;
8.  Any and all records, documents, and materials related to foreign and domestic travel, including but not limited to plane tickets, hotel reservation documentation, international border crossing, or any document reflecting travel plans or itinerary.

The terms "records," "documents," and "materials" include all of the following items of evidence in whatever form and by whatever means such records, documents, or materials, their drafts, or their modifications may have been created and stored, including but not limited to: any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, such as hard disks or drives, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drivers, cellular telephones, personal digital assistants (PDAs), smart phones, tablets, or electronic notebooks.



Attachment C
Search Protocols

These warrants authorize the search of electronically stored information and other documents related to the items listed on Attachment B.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol:

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment B hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a.     Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b.     Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c.     Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein;

d.     Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order.